IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Tommy Dwayne Brown, | C/A No. 8:24-cv-04392-BHH-KFM |
| Plaintiff, | **REPORT OF MAGISTRATE JUDGE** |
| vs. | |
| Anderson County Sheriff's Department, U.S. Government, South Carolina Judicial System, Anderson County Detention Center, Judge Dennis Bannister, Judge Gambrell, Belton City Police Department, Ross Richey, Mayor Elavor Dorn, R. J. Brown, Officer Iacono, Officer Coon, Deputy Wagner, Ryan McCall, City of Belton, Allen Sims, Anderson County, State of South Carolina, Williamston Police Department, Brent Brooks, Officer West, Officer White, Officer Carter, SWAT Team, | |
| Defendants. | |

The plaintiff, a pretrial detainee proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. Pursuant to the provisions of 28 U.S.C. § 636(b), and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and submit findings and recommendations to the district court.

The plaintiff's complaint was entered on the docket on August 12, 2024 (doc. 1), and his amended complaint was entered on the docket on August 28, 2024 (docs. 7; 7-1). On September 11, 2024, the undersigned issued an order informing the plaintiff that his amended complaint was subject to dismissal as drafted and providing him with time to file a second amended complaint to correct the deficiencies noted in the order (doc. 12). The plaintiff was informed that if he failed to file a second amended complaint or cure the

deficiencies outlined in the order, the undersigned would recommend that his claims be dismissed (*id*. at 18). The plaintiff has failed to file a second amended complaint within the time provided; accordingly, the undersigned recommends that the instant matter be dismissed.

**ALLEGATIONS**

The plaintiff, a pretrial detainee at the Anderson County Detention Center (the "Detention Center"), filed this action seeking injunctive relief and money damages from the defendants (docs. 7; 7-1). The plaintiff purports to bring this case along with two fellow detainees: Corey Robinson and Glynn Harper) (doc. 7 at 1). Of note, the plaintiff's allegations appear to involve at least some of his pending charges in the Anderson County General Sessions Court, which include distribution of methamphetamine, two counts of unlawful carry of a pistol or ammunition, two counts of resisting arrest, use of 911 unlawfully, assault and battery second degree, arson second degree, and harassment second degree.[1] *See* Anderson County Public Index, https://publicindex.sccourts.org/Anderson/PublicIndex/PISearch.aspx (enter the plaintiff's name and 2024A0410900005, 2024A0410900006, 2024A0410100245, 2024A0410200426, 2024A0420100003, 2024A0420100004, 2024A0420100051, 2024A0420100070, 9012P0632257) (last visited October 8, 2024).

The plaintiff alleges immunity, illegal search and seizure, excessive use of force, and an illegally high bond (doc. 7 at 4). The plaintiff contends that he is Caucasian and the Mexican cartel members have been given immunity for selling drugs and he hasn't (docs. 7 at 5; 7-1 at 1, 5). The plaintiff contends that an Anderson County officer threatened him and planted drugs on him, as well as that all state and local law

---

[1] *Phillips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that '[t]he most frequent use of judicial notice . . . is in noticing the content of court records.'").

2

enforcement are stalking and harassing him (doc. 7-1 at 2). The plaintiff also alleges that Officer Carter illegally searched his truck and would not let the plaintiff report on the Mexican Cartel (*id*.). The plaintiff had valuable gold and silver in his truck that has not been recovered since the illegal search (*id*.). Officer West allegedly took money from the plaintiff when transporting him to the Detention Center and the money has also not been returned (*id*. at 3–4). The plaintiff further contends that Officers White and Carter stalked him and embarrassed him at a convenience store when they saw him (*id*. at 2–3).

The plaintiff contends that some of his pending unlawful carrying of a weapon charges are illegal because of a law signed by Governor McMaster (*id*. at 3). The plaintiff also contends that the cops convinced his daughter to sell drugs when he refused and that Officer Brooks and Officer Richey are selling drugs for the Mexican Cartel (*id*. at 4). Officer McCall has also made the plaintiff become a vigilante in the drug community to investigate things (*id*. at 7).

The plaintiff further contends that another detainee who was African American (Mr. Robinson) was attacked by two Caucasian cops and the plaintiff witnessed the attack (*id*.). He also contends that Mr. Harper was wrongfully arrested (*id*. at 4–5). The plaintiff contends that the Detention Center is dirty and the walls have mold and feces on them (*id*. at 5). The plaintiff also asserts that he has been placed in lockdown for filing lawsuits (*id*.).

The plaintiff contends that he has sued Deputy Wagner in another action for assaulting him and conducting an illegal search and seizure (*id*. at 2, 9). The plaintiff also alleges that he was shot with a beanbag round during the incident (that he says was a suicide attempt) as well as that his windows at his house were shot out (docs. 7 at 6; 7-1 at 3). During this incident, the plaintiff contends that he was shooting at Joe Kinsey because he felt threatened and instead of helping him, the cops slammed him to the ground when they arrived (doc. 7-1 at 9).

3

Due to the unlawful acts of the defendants in relation to his pending charges, the plaintiff contends that his pending charges are frivolous (doc. 7-1 at 6). The plaintiff also alleges that Judge Bannister and Judge Gambrell have set illegally high bonds for him and that Judge Bannister is not giving him a fair trial (*id*.). The plaintiff also asserts that his attorney, Travis Newton, indicated that the legal system was against him and told the plaintiff to stop complaining about Judge Bannister to the South Carolina Supreme Court (*id*. at 7). The Clerk of Court has also violated the plaintiff's rights by refusing to answer all of his questions when he calls (*id*.). The plaintiff seeks relief on behalf of himself and other detainees, seeks money damages, and requests that any involved officers be terminated (docs. 7 at 6; 7-1 at 8).

## **STANDARD OF REVIEW**

The plaintiff filed this action pursuant to 28 U.S.C. § 1915, the *in forma pauperis* statute. This statute authorizes the District Court to dismiss a case if it is satisfied that the action "fails to state a claim on which relief may be granted," is "frivolous or malicious," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Further, the plaintiff is a prisoner under the definition of 28 U.S.C. § 1915A(c), and "seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Thus, even if the plaintiff had prepaid the full filing fee, this Court is charged with screening the plaintiff's lawsuit to identify cognizable claims or to dismiss the complaint if (1) it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A.

As a *pro se* litigant, the plaintiff's pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam*). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to

4

allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

This complaint is filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## DISCUSSION

As noted above, the plaintiff filed the instant action pursuant to § 1983, seeking damages from the defendants. However, the plaintiff's amended complaint is subject to summary dismissal.

**Claims Asserted**

The plaintiff's amended complaint appears to seek relief on behalf of other detainees at the Detention Center as a proposed class action as well as individually on behalf of Corey Robinson and Glynn Harper (docs. 7 at 5; 7-1 at 1, 4–5). However, to the extent the plaintiff seeks to file such an action, his request is denied because a prisoner cannot file or maintain a lawsuit on behalf of others. *See Hummer v. Dalton*, 657 F.2d 621, 625–26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."). As

5

such, the plaintiff is instructed that this action is proceeding with respect to *only* his claims against the defendants.

### *Younger* Abstention

Liberally construed, it appears that part of the plaintiff's amended complaint requests that his pending criminal charges be dismissed (*see* doc. 7-1 at 1, 3, 6, 8). However, this court should abstain from interfering because a federal court may not award injunctive relief that would affect pending state criminal proceedings absent extraordinary circumstances. In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court held that a federal court should not interfere with state criminal proceedings "except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996). *Younger* noted that courts of equity should not act unless the moving party has no adequate remedy at law and will suffer irreparable injury if denied equitable relief. *Younger*, 401 U.S. at 43–45; *see also Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013) (explaining the circumstances when *Younger* abstention is appropriate). From *Younger* and its progeny, the Fourth Circuit Court of Appeals has culled the following test to determine when abstention is appropriate: "(1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise federal claims in the state proceedings." *Martin Marietta Corp. v. Md. Comm'n on Hum. Rels.*, 38 F.3d 1392, 1396 (4th Cir. 1994) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Here, the first criterion is met, as the plaintiff is involved in ongoing state criminal proceedings. As for the second criterion, the Supreme Court has stated that the "States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986). The Court also addressed the third criterion in noting "'that ordinarily a pending state prosecution provides

6

the accused a fair and sufficient opportunity for vindication of federal constitutional rights.'" *Gilliam*, 75 F.3d at 904 (quoting *Kugler v. Helfant*, 421 U.S. 117, 124 (1975)). Here, the plaintiff has the opportunity to assert in state court that his charges are unlawful based on a new law signed by Governor McMaster, that his charges are frivolous, and that drugs were planted on him in the Anderson County General Sessions Court proceedings. As such, the plaintiff has not made a showing of "extraordinary circumstances" justifying federal interference with the state proceedings. *See Robinson v. Thomas*, 855 F.3d 278, 286 (4th Cir. 2017) ("A federal court may disregard *Younger's* mandate to abstain from interfering with ongoing state proceedings only where 'extraordinary circumstances' exist that present the possibility of irreparable harm."). Therefore, to the extent the plaintiff seeks in this action to have his pending charges dismissed, this court should abstain from hearing this action.

**Failure to State a Claim**

As noted above, the court should abstain from interfering with the plaintiff's pending criminal proceedings in the Anderson County General Sessions Court under *Younger*. However, even aside from *Younger* abstention – as well as based on the numerous claims asserted by the plaintiff that are not affected by *Younger* – the plaintiff's amended complaint is also subject to summary dismissal for failure to state a claim. As an initial matter, to the extent the plaintiff seeks damages because Ofc. White, Ofc. Carter, and the Anderson County Sheriff's Department did not allow him to inform on the Mexican cartel (so members of the cartel could be arrested for selling drugs), his claim is subject to dismissal because private citizens lack a judicially cognizable interest in the prosecution or non-prosecution of another. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

*Duplicative Claims*

The plaintiff alleges, in passing, that he was assaulted and illegally searched by Deputy Wagner as well as that he was shot with a beanbag round (and had his windows

7

shot out) by Anderson County officers (doc. 7-1 at 2, 3, 6, 9). However, the plaintiff concedes that he has sought relief regarding these incidents in other pending cases in this court (*id*. at 2, 6, 9). As such, the claims are subject to dismissal in this case because the plaintiff has pursued them in another pending action in this court.

### *Not a Person*

A number of the defendants named in this action by the plaintiff may not be sued pursuant to § 1983 (or *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1999) for those acting under color of federal law): Anderson County Sheriff's Department, U.S. Government, S.C. Judicial System, Anderson County Detention Center, City of Belton Police Department, City of Belton, Anderson County, State of South Carolina, Williamston Police Department, and the SWAT Team (*see* docs. 7; 7-1).[2] It is well settled that only "persons" may act under color of law; thus, a defendant in a § 1983 action (or *Bivens* action) must qualify as a "person." *See Harden v. Green*, 27 F. App'x 173, 178 (4th Cir. 2001); *see also Farmer v. Brennan*, 511 U.S. 825, 839 (1994) (case law involving § 1983 claims is applicable in *Bivens* actions and vice versa). Further, inanimate objects or groups of people, such as departments, buildings, facilities, and grounds cannot act under color of law. *See also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a state nor its officials acting in their official capacities are 'persons' under § 1983."). The above-listed defendants are not "persons"; thus, they are subject to summary dismissal. *See Nelson v. Lexington Cnty. Det. Ctr.*, C/A No. 8:10-cv-2988-JMC, 2011 WL 2066551, at *1 (D.S.C. May 26, 2011) (finding that a building – the detention center – is not amenable to suit under § 1983).

---

[2] The plaintiff's claims against the State of South Carolina and Anderson County are also subject to dismissal based upon Eleventh Amendment Immunity. *See Alden v. Maine*, 527 U.S. 706, 712–13 (1999); *Alabama v. Pugh*, 438 U.S. 781, 781–82 (1978); *see also* S.C. Code Ann. § 15-78-20(e) (noting that the State of South Carolina has not consented to suit in federal court); *Quern v. Jordan*, 440 U.S. 332, 342–43 (1979) (holding that congress has not abrogated the state's sovereign immunity in § 1983 actions).

Even construing the plaintiff's amended complaint as asserting a claim for municipal liability against any of these defendants, his claim still fails (*see* docs. 7; 7-1). As an initial matter, municipalities and other local governing bodies are considered "persons" and may be sued under Section 1983. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). However, a county or city cannot be held liable pursuant to *respondeat superior* principles. *Iqbal*, 556 U.S. at 676. "[N]ot every deprivation of a constitutional right will lead to municipal liability. Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citing *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). As the Court of Appeals for the Fourth Circuit has stated:

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Id*. (quoting Carter, 164 F.3d at 217). Additionally, under *Monell*, municipal liability arises "only where the constitutionally offensive actions of employees are taken in furtherance of some municipal policy or custom." *Walker v. Prince George's Cnty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (internal quotation marks and citations omitted). Here, however, as outlined in more detail below, the plaintiff has failed to allege any constitutionally offensive action by an individual defendant. *See Evans v. Chalmers*, 703 F.3d 636, 654–55 (4th Cir. 2012) (noting that when a plaintiff fails to state a § 1983 claim against individual officers, claims based upon supervisory and/or *Monell* liability also fail). As such, the plaintiff's claims against these defendants are subject to summary dismissal.

### *No Personal Allegations*

The plaintiff's amended complaint fails to make personal allegations of wrongdoing against defendants Mayor Elavor Dorn, Ofc. Iacono, Ofc. Coon, or Allen Sims

(*see* docs. 7; 7-1).  Indeed, it is unclear in what capacity these defendants were involved in the plaintiff's alleged constitutional deprivations.  Although the plaintiff's allegations must be liberally construed, the plaintiff must provide more than general and conclusory statements to allege a plausible claim for relief.  *Adams v. Rice*, 40 F.3d 72, 74–75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995); *see Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (noting that liability under § 1983 "requires personal involvement").  Moreover, as recently reiterated by the Fourth Circuit, general, conclusory, and collective allegations against groups of defendants fail to allege a plausible claim.  *See Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. Mar. 2, 2023) (recognizing that the plaintiff's complaint failed to meet the plausibility standard when it did not set forth who the defendants were beyond being employees where he was incarcerated or in what capacity the defendants interacted with the plaintiff).  As such, these defendants are entitled to summary dismissal.

### *Judge Bannister & Judge Gambrell & Clerk of Court*

The plaintiff alleges that Judge Bannister and Judge Gambrell violated his rights by setting illegally high bonds and not providing the plaintiff with a fair trial (doc. 7-1 at 6).  The plaintiff also contends that his rights have been violated by the Clerk of Court because the Clerk of Court would not answer all of his questions when he called (*id*. at 7).  It is well-settled that judges have absolute immunity from a claim for damages arising out of their judicial actions unless they acted in the complete absence of all jurisdiction.  *See Mireles v. Waco*, 502 U.S. 9, 11–12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356–64 (1978); *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985) (explaining that if a challenged judicial act was unauthorized by law, the judge still has immunity from a suit seeking damages).  Whether an act is judicial or non-judicial relates to the nature of the act, such as whether it is a function normally performed by a judge and whether the parties dealt with the judge in his judicial capacity.  *Mireles*, 502 U.S. at 12.  Immunity applies even when the judge's acts were in error, malicious, or in excess of his authority.  *Id.* at 12–13.  Absolute

immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted). The allegations as to Judge Bannister and Judge Gambrell concern their judicial actions; as such, judicial immunity squarely applies and any claims against them should be dismissed. Additionally, the plaintiff's allegations against the Clerk of Court involve the Clerk's role as the Clerk of Court under the direction of judicial officers; thus, the Clerk of Court has immunity and should be dismissed. *See Holcomb v. Greenville Cnty. Clerk of Ct.*, C/A No. 6:17-cv-02001-MGL-SVH, 2017 WL 4023128, at *3 (D.S.C. Aug. 23, 2017), *Report and Recommendation adopted by* 2017 WL 4012389 (D.S.C. Sept. 12, 2017) (noting that immunity was extended to court support personnel because "disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts" (internal citation and quotation marks omitted)). As such, the plaintiff's claims against Judge Bannister, Judge Gambrell, and the Clerk of Court are subject to summary dismissal.

### *Travis Newton, Esquire*

To the extent the plaintiff asserts claims against Travis Newton, Esquire, an attorney who represent(ed) him in his pending criminal charges (doc. 7-1 at 7), his claims are subject to summary dismissal because Mr. Newton does not act under color of state law. It is well-settled that "[a]nyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (internal citation omitted). To determine whether state action is present, no single factor is determinative and the "totality of the circumstances" must be evaluated. *See Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 341–43 (4th Cir. 2000). However, purely private conduct, no matter how wrongful, is not actionable under 42 U.S.C. § 1983 and the United States Constitution. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982); *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001).

11

The law is well-established that a privately-hired, pro bono, or appointed defense counsel, such as Mr. Newton, is not a state actor for purposes of § 1983 claims because defense counsel acts not on behalf of the state; rather, defense counsel "is the State's adversary." *Polk Cnty. v. Dodson*, 454 U.S. 312, 322–23 & n.13 (1981); *see Mahaffey v. Sumter Cnty. Pub. Defender's Corp.*, C/A No. 3:06-3557-SB, 2007 WL 3001675, at *4 (D.S.C. Oct. 9, 2007) ("[T]he Sumter County Public Defender's Corp. did not act under color of state law and is entitled to summary dismissal."); *see also Hall v. Quillen*, 631 F.2d 1154, 1155–56 (4th Cir. 1980) (finding no state action under § 1983, even where the plaintiff's attorney was court-appointed). As such, Mr. Newton is subject to summary dismissal.

### *Verbal Abuse Claims*

The plaintiff alleges that he, his daughter, and his wife were threatened by an agent with Anderson County, that he was embarrassed by Ofc. Carter and Ofc. White at a convenience store, and that all state and local law enforcement are stalking and harassing him (doc. 7-1 at 1, 2–3). These allegations fail to rise to the level of a constitutional claim. Although the use of derogatory or embarrassing statements, such as the ones alleged by the plaintiff in this matter, are not endorsed by the court, "[m]ere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983". *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)); *Morrison v. Martin*, 755 F.Supp. 683, 687 (E.D.N.C. 1990), *aff'd* 917 F.2d 1302 (4th Cir. 1990) (noting that "[w]ords by themselves do not state a constitutional claim, without regard to their nature" (internal citation omitted)). As such, the plaintiff's allegations that he was harassed, embarrassed, and threatened by various defendants are subject to summary dismissal.

### *Property Deprivation Claim*

To the extent the plaintiff seeks damages for money that went missing when he was arrested and for gold and silver that was not recovered from his truck after he was arrested (doc. 7-1 at 2, 3–4), his claim is subject to summary dismissal. The United States Supreme Court has explicitly recognized that deprivations of a detainee's personal property do not rise to the level of a constitutional violation so long as there are adequate state law post-deprivation remedies. *See Daniels v. Williams*, 474 U.S. 327 (1986); *Mora v. City of Gaithersburg*, 519 F.3d 216, 230–31 (4th Cir. 2008) (holding that deprivations of personal property by corrections officials are not constitutional violations so long as there are post-deprivation remedies). South Carolina has such remedial procedures in place. *See* S.C. Code § 15-78-10, *et seq.* As such, the plaintiff cannot pursue his deprivation of property claim in this court.

### *Bond Claim*

To the extent the plaintiff argues that his bond has been set too high (doc. 7-1 at 4, 6), he seeks relief under the Eighth Amendment. The Eighth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII; *see also Grimes v. Pszczolkowski*, C/A No. 1:14-cv-13, 2015 WL 144619, at *22 (N.D. W. Va. Jan. 12, 2015). "However, the United States Constitution does not establish an absolute right to bail, nor does federal statutory law provide a right to bail in state criminal cases." *Odom v. Smalls*, C/A No. 3:09-cv-00629-PMD, 2009 WL 3805594, at *3 (D.S.C. Nov. 12, 2009). "The Eighth Amendment addresses pretrial release by providing merely that '[e]xcessive bail shall not be required.' This Clause, of course, says nothing about whether bail shall be available at all." *United States v. Salerno*, 481 U.S. 739, 752 (1987). Here, as outlined above, the plaintiff has a variety of pending charges (including distribution of methamphetamine, two counts of unlawful carry

of a pistol or ammunition, two counts of resisting arrest, use of 911 unlawfully, assault and battery second degree, arson second degree, harassment second degree). *See* Anderson County Public Index (enter the plaintiff's name and 2024A0410900005, 2024A0410900006, 2024A0410100245, 2024A0410200426, 2024A0420100003, 2024A0420100004, 2024A0420100051, 2024A0420100070, 9012P0632257) (last visited October 8, 2024). A review of publicly available dockets for the pending charges reveals that the plaintiff had a bond for each charge, ranging from $1,000 to $25,000 (with one personal recognizance bond), and he was able to post bond each time. *See* Anderson County Public Index (enter the plaintiff's name and 2024A0410900005, 2024A0410900006, 2024A0410100245, 2024A0410200426, 2024A0420100003, 2024A0420100004, 2024A0420100051, 2024A0420100070, 9012P0632257) (last visited October 8, 2024). Indeed, the plaintiff appears to be dissatisfied with the revocation of his bonds (not their amount) after he was arrested on new charges on June 13, 2024 (with the order revoking his bond entered July 31, 2024). *See* Anderson County Public Index (enter the plaintiff's name and 2024A0410900005, 2024A0410900006, 2024A0410100245, 2024A0410200426, 2024A0420100003, 2024A0420100004, 2024A0420100051, 2024A0420100070, 9012P0632257) (last visited October 8, 2024). Accordingly, the plaintiff's bond was revoked based on his arrest on June 13, 2024; thus, his claim that his bonds were too high is also subject to dismissal. *See Odom*, 2009 WL 3805594, at *3.

### *Retaliation Claim*

The plaintiff alleges in passing that he has been retaliated against because he was placed on lockdown for filing cases in the United States District Court (doc. 7-1 at 5). Where a plaintiff alleges that an act was taken in response to the exercise of a constitutionally protected First Amendment right, the plaintiff must allege that (1) he engaged in "protected First Amendment activity, (2) [the defendant] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship

14

between [his] protected activity and [the defendant's] conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)). Because conduct that "tends to chill the exercise of constitutional rights might not itself deprive such rights," a plaintiff can plausibly allege a retaliation claim without alleging an actual deprivation of his First Amendment rights. *Constantine*, 411 F.3d at 500. With respect to causation, a plaintiff must plausibly allege knowledge by the defendant of a plaintiff's protected activity as well as that the retaliation took place within some "temporal proximity" of that activity. *Id.* at 501; *see Germain v. Bishop*, C/A No. TDC-15-1421, 2018 WL 1453336, at *14 (D. Md. Mar. 23, 2018). A prisoner must present more than conclusory accusations of retaliation, and must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. *See e.g.*, *Adams v. Rice*, 40 F.3d 72, 74–75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995); *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996).

Here, the plaintiff has not alleged a retaliation claim. Indeed, although the plaintiff's allegations must be liberally construed, the plaintiff must provide more than general and conclusory statements to allege a plausible claim for relief. *Adams*, 40 F.3d at 74–75; *see Iqbal*, 556 U.S. at 676 (noting that liability under § 1983 "requires personal involvement"). Moreover, as recently reiterated by the Fourth Circuit, general, conclusory, and collective allegations against groups of defendants fail to allege a plausible claim. *See Langford*, 62 F.4th at 124–25. For example, the plaintiff has alleged engagement in protected activity, but has not alleged which defendant was responsible for him being placed on lockdown or that the retaliating defendant was aware of his engagement in protected activity. As such, the plaintiff's retaliation claim is subject to dismissal.

### *Conditions of Confinement Claims*

The plaintiff also alleges unconstitutional conditions of confinement at the Detention Center, including that the walls have mold and feces on them and the cells are

overcrowded (doc. 7-1 at 5). At all relevant times herein, the plaintiff was a pretrial detainee; thus, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment (which is used to evaluate conditions of confinement claims for individuals convicted of crimes). *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983). In any event, "[the] due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Recently, the Fourth Circuit held in a published decision that pretrial detainees could state a Fourteenth Amendment claim for deliberate indifference to a serious risk of harm on a purely objective basis that the challenged action is not related to a legitimate non-punitive governmental purpose or is excessive in relation to that purpose. *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

Here, the plaintiff's vague reference to mold and feces on the walls of the Detention Center and the cells being overcrowded at the Detention Center fails to state a plausible constitutional claim. *Griffith v. State Farm Fire and Cas. Co.*, C/A No. 2:12-cv-00239-DCN, 2012 WL 2048200, at *1 (D.S.C. June 6, 2012) (noting that the plausibility standard requires more than "'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" (quoting *Iqbal*, 556 U.S. at 678)); *see Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) (noting that the Constitution does not mandate comfortable prisons, and only deprivations which deny the minimal civilized measure of life's necessities are sufficiently grave to provide the basis of a § 1983 claim). The plaintiff has also failed to allege how the defendants named in this action were responsible for the alleged unconstitutional conditions. As such, the plaintiff's conditions of confinement claims are also subject to summary dismissal.

***Frivolous***

Some of the plaintiff's claims are subject to dismissal because they are frivolous in nature. For example, the plaintiff's assertion that the defendants are working with and allowing the Mexican Cartel to sell drugs (doc. 7-1 at 1, 4, 5) is clearly frivolous in nature. Similarly, the plaintiff's assertions that he had to investigate the drug community (which led to his arrest) when Officer McCall refused to investigate (doc. 7-1 at 4, 7), are likewise frivolous and fantastical in nature. It is well-settled that the court has the authority to dismiss claims that are obviously "fantastic" or "delusional." *Adams*, 40 F.3d at 74; *Raiford v. FBI*, C/A No. 1:10-cv-2751-MBS-JRM, 2010 WL 6737887, at *3 (D.S.C. Nov. 17, 2010), *Report and Recommendation adopted by* 2011 WL 2020729 (D.S.C. May 23, 2011) (explaining a finding of factual frivolousness is appropriate when "the facts alleged rise to the level of the irrational or the wholly incredible"). In reviewing a complaint for frivolousness or malice, the court looks to see whether the complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. *Harley v. United States*, 349 F. Supp. 2d 980, 981 (M.D.N.C. 2004) (citing *Neitzke v. Williams*, 490 U.S. 319 (1989)). The Court must accept all well-pled allegations and review the complaint in a light most favorable to plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Here, even when reviewed in a light most favorable to the plaintiff, the amended complaint is comprised of factual allegations that are not credible, and which fail to state a claim for relief. *See Neal v. Duke Energy*, No. 6:11-cv-1420-HFF-KFM, 2011 WL 5083181, at *4 (D.S.C. June 30, 2011), *Report and Recommendation adopted by* 2011 WL 5082193 (D.S.C. Oct. 26, 2011) (dismissing action upon finding plaintiff's factual allegations were frivolous, fanciful, and delusional where plaintiff claimed defendants clandestinely placed a GPS device in her car while it was in the shop for repairs and that she was being stalked by the defendants, noting the allegations were "made without any viable factual

17

supporting allegations and appears to be the product of paranoid fantasy"); *Feurtado v. McNair*, No. 3:05-cv-1933-SB, 2006 WL 1663792, at *2 (D.S.C. Jun. 15, 2006) (noting that frivolousness encompasses inarguable legal conclusions and fanciful factual allegations), *aff'd*, 227 F. App'x 303 (4th Cir. 2007), *petition for cert. dismissed*, 553 U.S. 1029 (2008). As outlined above, the plaintiff's allegations that the defendants are working with the Mexican cartel to sell drugs and that he was forced to investigate the drug community because they would not (leading to his arrest for distributing methamphetamine), are clearly frivolous and lack a basis in the law. As such, some of the plaintiff's claims are also subject to summary dismissal as frivolous.

## **RECOMMENDATION**

By order issued September 11, 2024, the undersigned provided the plaintiff an opportunity to correct the defects identified in his amended complaint and further warned the plaintiff that if he failed to timely file a second amended complaint or failed to cure the identified deficiencies, the undersigned would recommend to the district court that the action be dismissed *with prejudice* and without leave for further amendment (doc. 12). The plaintiff failed to file a second amended complaint within the time provided. As such, in addition to the reasons discussed herein, this action should be dismissed pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with a court order. Therefore, the undersigned recommends that the district court dismiss this action with prejudice, without further leave to amend, and without issuance and service of process.[3] *See Britt v. DeJoy*, C/A No. 20-1620 (4th Cir. Aug. 17, 2022) (published) (noting that "when a district court dismisses a complaint or all claims without providing leave to amend . . . the order

---

[3] The plaintiff is warned that if the United States District Judge assigned to this matter adopts this report and recommendation, the dismissal of this action for failure to state a claim could later be deemed a strike under the three-strikes rule. *See Pitts v. South Carolina*, 65 F.4th 141 (4th Cir. 2023).

18

dismissing the complaint is final and appealable"). **The attention of the parties is directed to the important notice on the following page**.

        **IT IS SO RECOMMENDED**.

<u>s/Kevin F. McDonald</u><br>
United States Magistrate Judge

October 9, 2024<br>
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committees note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Room 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).